## LITTLE v. DICKEY BROS. et al.

### No. 9532.

Court of Civil Appeals of Texas. Galveston.
March 6, 1931.

Rehearing Denied March 26, 1931.

C. M. Alderson and J. H. Pugh, both of Houston, for appellant.

Berry & Berry, of Houston, for appellees Dickey Bros.

Arterbury & Coolidge, of Houston, for appellee Houston & T. C. R. Co.

LANE, J.

R. N. Little brought this suit against the Houston & Texas Central Railroad Company and the Waco, Beaumont, Trinity & Sabine Railway Company, and against Clayburn Dickey and Willis Dickey, who were doing business under the name of Dickey Bros.

Plaintiff substantially alleged that he bought a carload of stock hogs, 88 in number, for breeding purposes, from Dickey Bros., at or near Groveton, in Trinity county, Tex., and had them delivered to the Waco, Beaumont, Trinity & Sabine Railway Company at Groveton for shipment from Groveton to Millican in Brazos county, Tex., upon a through bill of lading. He alleged that, at the time he purchased the hogs and at the time they were shipped, they, or some of them, were affected with hog cholera, and that Dickey Bros. had warranted them to be free of such disease. He alleged that a large number of such hogs died, and that, as he had placed them in a pasture with 18 head of hogs formerly owned by him, such hogs took cholera and 17 of them died. He sought recovery against Dickey Bros. and the railway companies for the sum of $625.50, the alleged value of the dead hogs, and $50 medical expenses incurred in doctoring the hogs.

He also alleged, as against the railway companies, that they were negligent in not seeing that the hogs were properly vaccinated by a state live stock inspector before shipping them, and in not attaching a certificate to the bill of lading showing such vaccination.

He also alleged that, if as a fact no cholera existed in the shipment of hogs at the time they were shipped, then he says, as an alternative plea, that the initial carrier, the Waco, Beaumont, Trinity & Sabine Railway Company, loaded the hogs into a car infected with cholera, causing them to become infected with hog cholera.

The Waco, Beaumont, Trinity & Sabine Railway Company answered by general demurrer, general denial, and specially pleaded contributory negligence on the part of the plaintiff.

The Houston & Texas Central Railroad Company answered by general demurrer, general denial, and specially pleaded that, if plaintiff suffered any damages to the shipment of hogs growing out of any disease they might have had as the result of the failure of defendants to demand a health certificate, then it says that such damages were a direct and proximate result of plaintiff's own negligence, in that it was his duty to procure, himself, or through his agent, the health certificate and to furnish the same to the initial carrier; that plaintiff failed to perform such duty.

Dickey Bros. answered by general demurrer and general denial.

All the demurrers were overruled by the court. The case was tried before the court without a jury, who, after hearing the evidence and arguments, rendered judgment in favor of all defendants. The plaintiff has appealed.

Upon request therefor the court filed his findings of facts as follows:

"(a) The plaintiff failed to prove by a preponderance of the evidence that the hogs were infected with hog cholera at the time they were sold to plaintiff at Groveton, Texas.

"(b) The plaintiff failed to prove by a preponderance of the evidence that the hogs were infected with hog cholera at the time they were delivered to the plaintiff at Millican, Texas.

"(c) The plaintiff failed to prove by a preponderance of the evidence that Dickey Brothers expressly warranted to the plaintiff that the hogs were free from cholera at the time they were sold to plaintiff.

"(d) The plaintiff failed to prove by a preponderance of the evidence that the fact that there was no certificate issued by the State Live Stock Inspector attached to the way-bill of the shipment was a proximate cause of the loss to plaintiff."

The court also found that the plaintiff was the shipper of the hogs, and that as such shipper it was his duty to see that the hogs were vaccinated and to procure and furnish to the carrier a certificate showing such vaccination, and that his failure to so procure and furnish such certificate bars him from any loss which could have resulted from the failure of the carrier to attach such certificate to the waybill.

The court concluded that as a matter of law plaintiff was not upon the evidence entitled to a recovery against any of the defendants.

The assignments of error upon which appellant relies for a reversal are substantially as follows:

1. That the court erred in holding that plaintiff had not sustained by a preponderance of the evidence his allegations that Dickey Bros. had expressly and impliedly warranted that the hogs were sound and healthy and free from cholera, and that there was no hog cholera in the county where the hogs were located, because such holding is contrary to the evidence.

2. That the judgment of the court is contrary to the law, because (1) the court erroneously held that the defendant carriers were not guilty in not obtaining the health certificate provided for by law and in not attaching same to the waybill upon which the hogs were shipped; (2) the court erred in not finding that plaintiff was entitled to recover against Dickey Bros., on an implied warranty that the hogs were fit for breeding purposes;

and (3) because the court erred in holding that it was the duty of the shipper, and not that of the carriers, to furnish the health certificate required by law, and in further holding that plaintiff was the shipper of the hogs.

■■ We overrule all of such assignments. It is shown that plaintiff, desiring to purchase hogs for breeding purposes, wrote to one Claude Davis, whom he termed, "My old time friend, who lived at Groveton," asking him to let him know where he could get some hogs; that in reply Davis informed him that Dickey Bros. had a bunch of hogs to sell; that he went to Groveton, called on Dickey Bros., and went out with Willis Dickey, one of the brothers, and his old friend Claude Davis, to look at the hogs of Dickey Bros., which they had for sale; that he saw about 60 hogs; that they looked all right; that he and Willis Dickey agreed on a price of 11 cents per pound; that the hogs he saw and agreed to pay 11 cents per pound for were not sufficient in number to make a car shipment, so he agreed that Dickey Bros. should get an additional number of hogs to fill out a car shipment, for which he agreed to pay the same price he agreed to pay for the others; that upon such agreement he gave the sellers a check for $500 in part payment of the purchase price of the hogs; that he then went home. It is shown that Dickey Bros. got an additional number of hogs, which, added to those seen by plaintiff, made 88 in all; that, when all the hogs were gotten together and ready for shipment, Claude Davis paid Dickey Bros. the balance due on the whole lot by giving them his personal check. It is shown that the $500 given to Dickey Bros. was dated August 2, 1926, and that Claude Davis paid the balance of the purchase price of the hogs before they were shipped to plaintiff; that the hogs were shipped on August 5, 1926, from Groveton over the line of the Waco, Beaumont, Trinity & Sabine Railway Company to Houston, and from thence over the line of the Houston & Texas Central Railway Company to Millican, Tex., arriving there at about noon on August 6, 1926; that Claude Davis hauled the hogs in his truck from Dickey Bros.' ranch to Groveton, attended to their weighing, and then placed them in the car ready for shipment; that, after the hogs were loaded into the car, Willis Dickey signed the bill of lading as the consignor, which designated plaintiff, R. N. Little, as consignee, and, after Claude Davis had paid Dickey Bros. the balance due on the hogs, he sent plaintiff Little a bill amounting to $174.15, which included the balance paid for the hogs and $15 for his services rendered plaintiff in attending to the weighing of the hogs and thereafter hauling them to and placing them in the car for shipment.

Such showing we think was sufficient to support the court's finding that the hogs became the property of plaintiff at Groveton,

and of course before they were shipped, and that thereafter he·was the real shipper, and that, being such shipper, it was his duty to see that the health certificate mentioned herein was procured and furnished to the carrier so that it might be attached to the waybill, and that, not having done so, he could not recover as against the carriers any damage which he might have suffered because of the absence of such certificate.

The evidence as to whether Dickey Bros. represented to plaintiff that the hogs were in good health prior to the purchase thereof by plaintiff is conflicting, and we are not prepared to hold that the finding of the court that the evidence did not show by a preponderance that such representations were made as alleged by the plaintiff was error.

We also think that the finding of the court that it was not shown by a preponderance of the evidence that the hogs at the time they were sold to the plaintiff were afflicted with cholera, or that they had been exposed to cholera, is sustained by the evidence.

Having reached the conclusions above expressed, the judgment is affirmed.

Affirmed.